# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

BRIAN M. PURICELLI,

       Plaintiff,

   v.

JUNE SONDRA BARKAN,

      Defendant.

No. 1:20-cv-16068-NLH-KMW


**OPINION**

**APPEARANCES**:

BRIAN M. PURICELLI
LAW OFFICE OF BRIAN M. PURICELLI, ESQ.
2721 PICKERTOWN RD.
WARRINGTON, PA 18976

   *On behalf of Plaintiff.*

ELIZABETH J. HAMPTON
FOX ROTHSCHILD LLP
P.O. BOX 5231
997 LENOX DRIVE, BUILDING 3
PRINCETON, NJ 08543-5231

   *On behalf of Defendant.*


**HILLMAN**, **District Judge**

   Presently before the Court are Plaintiff's motion for default judgment (ECF 6), Defendant's motion to dismiss (ECF 9), and Plaintiff's motion to strike defendant's motion to dismiss (ECF 10).  For the reasons set forth below, Plaintiff's motion for default judgment and motion to strike Defendant's motion to dismiss will be denied.  Defendant's motion to dismiss will be

granted in its entirety.

## BACKGROUND

The Complaint in the instant matter was filed with this Court on November 16, 2020. (ECF 1).  The dispute underlying the Complaint involved a settlement agreement between the parties regarding the administration of Defendant's mother's, Estelle's, estate and Plaintiff's compensation for services provided (the "Settlement Agreement").  The Settlement Agreement, which was approved by Orphans' Court Division of the Court of Common Pleas of Bucks County on October 5, 2020, resolved Plaintiff's claims to Estelle's estate.[1]  Plaintiff had been Estelle's lawyer for many years prior to her death in December 2019. (ECF 1 at 3). During that time, Estelle executed multiple wills.

Of import here, Estelle executed a will in April 2019 (the "April Will"), which named Defendant as Executrix and left a significant portion of her estate to her.  (Id. at 8-9).  Then in December 2019, ten days before her death, Estelle executed another will (the "December Will") which gave Plaintiff much more control of the administration of the estate and a much

---

[1] References to the "Orphans' Court Proceeding" refer to In re: Estate of Estelle Barkan, Deceased, O.C. Case No. 2020-E0285, which is before the Orphans' Court Division of the Court of Common Pleas of Bucks County.  The Court takes judicial notice of the Orphans' Court Proceeding.  Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) ("[A] court may take judicial notice of the record from a previous court proceeding between the parties.")

2

larger payout.  (See id.)  Defendant challenged the December

Will in Orphans' Court Division of the Court of Common Pleas of

Bucks County, asserting that Plaintiff had exerted undue

influence over her mother and that the December Will was

ineffective as a matter of law and should be replaced with the

April Will. (Orphans' Court Proceeding, Dkt. No. 1).

On August 28, 2020, the parties entered into the Settlement

Agreement which resolved the dispute in Orphans' Court.

Defendant was to pay Plaintiff $700,000 in exchange for

Defendant's relinquishment of any claims against Defendant and

Estelle's estate.  (Id. at Dkt. No. 10).  On October 5, 2020,

the Orphan's Court approved the Settlement Agreement.  (Id. at

Dkt. No. 12).  Defendant contends that after the execution of

the Settlement Agreement but before Defendant transferred

$700,000 to Plaintiff, Defendant noticed that Plaintiff had made

payments to himself out of Estelle's estate that Defendant

believed were inappropriate. (ECF 9 at 9).  On November 16,

2020, Defendant filed a petition asking the Orphans' Court to

confirm that a payment of $673,705, instead of the $700,000

written into the Settlement Agreement, satisfied her obligations

under the Settlement Agreement. (Orphans' Court Proceeding, Dkt.

No. 15).  On December 3, 2020, The Orphans Court issued an order

to show cause as to why the deduction was not appropriate.  (Id.

at Dkt. No. 16).  Defendant responded on January 11, 2021 and

the Orphans' Court did not appear to have opined on the issue as of the briefing on the pending motions in this court. (Id. at Dkt. No. 18).

The same day that Defendant filed the petition regarding the deduction to the settlement payment in Orphans' Court, Plaintiff filed the instant action in this Court.  The Complaint ostensibly listed six causes of action (1) declaration of rights and injunction, (2) defamation and false light, (3) breach of contract, (4) tortious interference with a contract, (5) unjust enrichment/quasi contract, and (6) conversion.[2]

In Plaintiff's motion for default judgment, he states in a conclusory manner that Defendant was served on January 8, 2021 and that Defendant only appeared on April 1, 2021, more than 60 days after service. (ECF 6 at 1).  In her responsive briefing, Defendant challenges this version of events.  She states that she wrote to Plaintiff on February 26, 2021 as soon as she learned of the action and stated that she did not receive any request to waive service in the matter and only obtained copies of the Complaint and Summons after learning about the existence of this matter.  (ECF 7 at 3-4).  It was in the February 26, 2021 letter that Defendant stated that she would be willing to

---

[2] Plaintiff repeats some numbering of the counts in the Complaint.  For ease of reference, the Court will refer to the counts in the number order that they appear in the Complaint.

4

waive service and executed a waiver to be filed on the docket. (Id.)

Plaintiff contends that Defendant actually received the Complaint and Summons back in January because the signature line for the recipient on the certified mail card "was signed by the known signature for [Defendant]." (ECF 3 at 1-2). Plaintiff does not explain how the signature is "known" to be Defendant's. Indeed, Defendant denies that the signature is hers and is not aware of anyone who signed or would have signed the card on her behalf. (ECF 7 at 9-10). Notably, what appears to be the request for waiver form that Plaintiff sent to Defendant was already filled out and signed by Plaintiff. (ECF 3 at 4).

Shortly after Plaintiff filed his motion for default judgment, Defendant filed a motion to dismiss the Complaint in its entirety arguing that the Complaint was dismissible under the probate exception, res judicata, failure to state a claim, and several abstention doctrines. (ECF 9). In Plaintiff's responsive brief, he cross-moved to strike the motion to dismiss as untimely. (ECF 10).

The Court will address each motion in turn.

## DISCUSSION

## I.   Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332.

## II.  **Motion for Default Judgment**

The court is authorized to enter a default judgment on a plaintiff's motion against a properly served defendant who fails to file a timely responsive pleading.  Fed. R. Civ. P. 55(b)(2). Chanel v. Gordashevsky, 558 F.Supp.2d 532, 535 (D.N.J. 2008) (citing Anchorage Assocs. v. Virgin Is. Bd. Of Tax. Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  The decision to enter a default judgment is left to the discretion of the court; however, the Third Circuit has articulated its "preference that cases be disposed of on the merits whenever practicable."  Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir, 1984).

In assessing a motion for default judgment, the court should accept as true all well-pleaded factual allegations – other than those regarding damages - but is not required to accept a plaintiff's legal conclusions.  Dempsey v. Pistol Pete's Beef N Beer, LLC, 2009 WL 3584597, at *3 (Oct. 26, 2009). Three factors guide whether a default judgement should be granted: (1) prejudice to the Plaintiffs if the default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether the defendant's delay is due to culpable conduct.  Chaberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  However, before determining whether a plaintiff is entitled to default judgment, the court must first review whether (1) there is sufficient proof of service, Gold Kist,

6

Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir.1985),
and (2) the Complaint demonstrates a valid cause of action.
Richardson v. Cascade Skating Rink, 2020 WL 7383188, at *2
(D.N.J. Dec. 16, 2020).

At the outset, Plaintiff has not met his burden to show
sufficient proof of service on the date that he contends that
the clock began to run under which Defendant had to move to
dismiss or answer. See Mills v. Ethicon, Inc., 406 F. Supp. 3d
363, 392 (D.N.J. 2019) ("Once a challenge to the sufficiency of
service is lodged, 'the party asserting the validity of service
bears the burden of proof on that issue.'") (quoting Grand
Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488
(3d Cir. 1993)). "This burden can be met by a preponderance of
the evidence using affidavits, depositions, and oral testimony."
Id. Service is governed by Federal Rule of Civil Procedure 4.
Per Rule 4, service can be completed by complying with the Rule
itself or by the rules of the state in which service is
effected. See Fed. R. Civ. P. 4(e)(1) (Service can be effected
"following state law for serving a summons in an action brought
in courts of general jurisdiction in the state where the
district court is located or where service is made[.]") In this
case, service would have to comply with either the Federal Rules
or with New Jersey law.

When asking for an individual defendant in the United

States to waive service under the Federal Rules, a plaintiff must put the request in a writing addressed to the defendant, name the court where the complaint was filed, attach a copy of the complaint with two waiver forms and a prepaid means for returning the form, inform the defendant of the consequences of waiving service, give the defendant at least 30 days to respond, and send the documents by first class mail or another reliable method. See id. at 4(d).  Plaintiff's efforts to show proof of service on January 8, 2021 fall egregiously short of this standard.  Plaintiff's motion for default judgment just states in a conclusory manner that the Defendant was served on January 8, 2021. (ECF 6).  That alone is not enough.

Plaintiff's previous filings regarding proof of service on January 8, 2021 do not meet his burden.  For instance, in his March 29, 2020 filing stating in sum and substance that Defendant had defaulted, Plaintiff does not show proof that he sent a copy of the complaint or two copies of the waiver form to the address where he attempted service on Defendant on that date.  (ECF 3).  Further, the scan of a waiver form that he does attach shows that the form was sent already signed by Plaintiff, which is incorrect under Rule 4(d).  See Fed. R. Civ. P. 4(d). He also does not submit proof that he provided a prepaid means for returning the waiver form.

Beyond the fact that Plaintiff has not shown that he

8

properly sent the necessary materials required to request a waiver of service on January 8, 2021, Defendant disputes that she ever received notice of the suit prior to executing a waiver of service on February 26, 2021. (ECF 7 at 12-13). Plaintiff's weak rejoinder to that statement is that the certified mail card has a signature that looks like Defendant's. (ECF 8 at 1). It is Plaintiff's burden to show that service was properly executed, Mills, 406 F. Supp. 3d at 392, and the Court holds that Plaintiff has not met his burden to show that Defendant was served on January 8, 2021 under Rule 4.

Plaintiff's attempt at service on January 8, 2021 is also insufficient under New Jersey law. See N.J. Ct. R. R. 4:4-4. New Jersey law requires an individual defendant to be personally served. Id. at 4:4-4(a)(1). Further, if a plaintiff decides to mail the summons and complaint "such service shall be effective for obtaining in personam jurisdiction only if the defendant answers the complaint or otherwise appears in response thereto, and provided further that default shall not be entered against a defendant who fails to answer or appear in response thereto." Id. at 4:4-4(c).

For the reasons stated above, Plaintiff also has not shown that he met the requirements to properly serve Defendant under New Jersey law on January 8, 2021. Defendant only received notice of the Complaint on February 26, 2021 and agreed

9

to waive service on that date.  Defendant filed her motion to
dismiss within 60 days of that waiver, in accordance with Rule
12(a)(1)(A)(ii), thereby making her response timely.  Therefore,
Plaintiff's motion for default judgment will be denied.

### III. **Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.[3]
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a

---

[3] Even though Plaintiff is proceeding pro se, he is a licensed
attorney and therefore is not entitled to the benefit of a less
stringent pleading standard. See Kovarik v. S. Annville Twp.,
2018 WL 1428293, at *7 (M.D. Pa. Mar. 22, 2018)
("Pro se attorney-litigants… typically cannot claim the special
consideration which the courts customarily grant to pro se
parties.") (internal quotation marks omitted).

cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### a. Failure to State a Claim under Rule 12(b)(6)

The Court will begin by addressing the substantive arguments to dismiss Plaintiff's claims under Rule 12(b)(6). As outlined below, the Court holds that Plaintiff has failed to

state a claim for any of his six counts.

Plaintiff first seeks a "Declaration of Rights and Injunction" under the Declaratory Judgment Act.  Plaintiff's styling his request for a declaration as a standalone claim evinces a fundamental misunderstanding of the Act.  "That Act is not a standalone source of rights, but a procedural vehicle for litigants to seek a declaration of their rights under some other law." MedWell, LLC v. Cigna Corp., 2021 WL 2010582, at *2 (D.N.J. May 19, 2021); In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig., 172 F. Supp. 3d 724, 740 (D.N.J. 2016) (stating that the Act does not confer an independent basis for federal jurisdiction).  Plaintiff does not link his request for declaratory judgment to another substantive legal provision.  Therefore, Count one must be dismissed.  MedWell, LLC, 2021 WL 2010582, at *2 ("Thus, Count 1 requires dismissal as a standalone claim[.]")

Count Two is styled as claim for "Defamation & False Light."  The Court looks to New Jersey law for the elements.[4]

---

[4] The Court applies New Jersey law here to Plaintiff's tort claims as the parties have not fully briefed whether New Jersey or Pennsylvania law applies and it appears there is no true conflict between the laws.  Rapid Models & Prototypes, Inc. v. Innovated Sols., 71 F. Supp. 3d 492, 498 (D.N.J. 2014) ("In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling."); Powell v. Subaru of Am., Inc., 502 F. Supp. 3d 856, 875 (D.N.J. 2020) ("First, the Court must determine whether there is an actual conflict between the laws of the two forums;

"To establish defamation under New Jersey law, a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." Reed v. Scheffler, 218 F. Supp. 3d 275, 281 (D.N.J. 2016), aff'd, 771 F. App'x 162 (3d Cir. 2019).  New Jersey courts also implicitly requiring some showing of harm. Dello Russo v. Nagel, 817 A.2d 426, 431(App. Div. 2003) ("To establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that defendant communicated a false statement about plaintiff to a third person that harms plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff.")

Plaintiff stumbles on the first element.  As far as the Court can understand from Plaintiff's rambling and typo-ridden complaint, he complains that Defendant told someone called "James M" that Plaintiff had exercised "undue influence" over Estelle and received an "illegal gift or fee" from the estate. (ECF 1 at 25).  Even taking this factual allegation as true, the

---

If there is no conflict or only a 'false conflict,' where 'the laws of the two jurisdictions would produce the same result on the particular issue presented,' the substantive law of the forum state applies.") (internal quotation marks omitted); Stewart v. Beam Glob. Spirits & Wine, Inc., 877 F. Supp. 2d 192, 196 (D.N.J. 2012)(applying New Jersey law where the parties did not fully brief the choice of law issue).

statements amount more to opinions than to facts.  See Reed, 218
F. Supp. 3d at 282 ("Statements of pure opinion do not satisfy
this requirement because such statements only reflect a state of
mind, and therefore generally cannot be proved true or false.")
(internal quotation marks omitted).

Even if the Court takes the statements at issue to have
underpinnings in fact, Plaintiff has not adequately plead which
parts of the statement were untrue. Id. at 282 ("Even though
plaintiff generally alleges that all of [defendant's] statements
were false, plaintiff does not specifically allege in his
complaint that the fact portions of Scheffler's statements were
not true.")  Plaintiff also does not adequately plead the harm
to his reputation, which is "fatal to his defamation claim." Id.
at 283; see also Malleus, 641 F.3d at 563 (noting requirement
that a plaintiff must state enough facts so that a pleading is
plausible on its face).

Finally, this statement appears to have been made in the
course of litigation and subject to the litigation privilege.
Dello Russo, 817 A.2d 426 at 432 ("[T]he litigation privilege
protects a litigant from liability for statements made in the
course of judicial, administrative, or legislative proceedings
by a litigant or other trial participant.")  The Court has
already taken judicial notice of the Orphans' Court Proceeding
and it appears that the statement in question was made in

15

connection with that proceeding.

To the extent that Plaintiff attempts to plead that tort of false light, he also has not adequately pled the tort. "The tort of false light has two elements: (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1116 (2009) (internal quotation marks omitted). First of all, as stated above, Plaintiff has done nothing to plead that the statement was false other than make a boilerplate statement that it was untrue. (ECF 1 at 25-26). Plaintiff further does not allege any facts suggesting that Defendant acted with knowledge of or with reckless disregard as to the falsity of the matter. (Id.)

Count Three of the Complaint is for breach of contract. Plaintiff summarily states "there exists a contract between the parties" and that his Complaint states its "essential terms." That is not clear at all. Plaintiff appears to be complaining of a breach of the Settlement Agreement which was docketed in the Orphans' Court Proceedings. The Settlement Agreement states that is governed by Pennsylvania law and the Court sees no reason not to apply that contractual provision. (See Orphans' Court Proceeding, Dkt. No. 10). "Under Pennsylvania law,

breach-of-contract claims contain three elements: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Udodi v. Stern, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

That was not done here. Firstly, Plaintiff does not come anywhere close to pleading the "essential terms" of the contract. He mentions that he was to be paid "$700,000 by November 11, 2020" but offers no further detail in how he was to be paid or on other elements of the contract. (ECF 1 at 26). Even if the Court were to look to the Settlement Agreement to understand more terms of the contract, Plaintiff fails on the second element. Put simply, he says nothing about how Defendant fell short of her contractual duty. This alone keeps his claim for a breach of contract from being plausible. Bissett v. Verizon Wireless, 401 F. Supp. 3d 487, 500 (M.D. Pa. 2019) (holding there was failure to state a claim where the plaintiff did not "describe the source of the alleged contractual duty involved, [or]… articulate how [the defendant's] actions would have constituted a breach of any alleged duty."); Malleus, 641 F.3d at 563 (requiring a plaintiff to set forth well-pleaded

factual allegations to satisfy the plausibility standard).

Plaintiff's next attempt to state is claim is through Count Four, which deals with tortious interference with a contract. "To establish this tort, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." DiGiorgio Corp. v. Mendez & Co., 230 F. Supp. 2d 552, 558 (D.N.J. 2002).  In terms of the second element, "malice" is taken to mean the intentional interference without a justification. Grande Vill. LLC v. CIBC Inc., 2015 WL 1004236, at *8 (D.N.J. Mar. 6, 2015) ("The term malice as used in a tortious interference claim under New Jersey law is not used in the literal sense requiring ill will toward the plaintiff, but instead malice is defined to mean that the harm was inflicted intentionally and without justification or excuse.") (internal quotation marks omitted).

Plaintiff does little more than recite legal conclusions of the elements of tortious interference with a contract in his Complaint (ECF 1 at 27-28).  In the first instance, it is not exactly clear the nature of the contract in which Plaintiff alleges Defendant interfered.  The lone sentence purporting to identify the contract in question refers to some "duty" that Estelle had to Plaintiff but does not offer context surrounding

18

said duty.  (Id. at 28).  It is unclear whether Plaintiff is

trying to reference one of Estelle's wills or some other

document or agreement.  Without a clear understanding of what

the contract is and its scope, the Court certainly cannot hold

that the contract was lost or breached as a result of

Plaintiff's interference or that the claim for "damages of not

less [sic] seventy-five thousand dollars" is plausible.

Further, even assuming there was some contract in which

Defendant interfered, Plaintiff has not shown that it was

without justification.  Indeed, the initiation of the Orphans'

Court Proceeding suggests the opposite.[5]

Count Five in the Complaint is titled "Unjust Enrichment/

Quasi Contract."[6]  New Jersey law has made clear that "unjust

---

[5] Defendant also argues that Defendant's tortious interference
with a contract claim is barred by the statute of frauds because
any contract between Estelle and Plaintiff would have fallen
under its purview.  The Court is unable to assess whether the
"contract" between Estelle and Plaintiff falls under the statute
of frauds in New Jersey or Pennsylvania, because Plaintiff
provides so little information on the agreement in question.
See 33 Pa. Stat. Ann. § 1, et seq.; N.J. Stat. Ann. § 25:1-10,
et seq.

[6] Defendant argues that a claim for unjust enrichment is
unavailable when a plaintiff is making a claim sounding in tort
rather than in contract. (See ECF 9 at 31.)  On the face of the
Complaint, it appears that Plaintiff is referring to some other
sort of agreement for legal services in which he entered with
the Defendant and not relying on his tort claims as a basis for
the count. (ECF 1 at 29).  In any case, the Court determines
that Plaintiff has not adequately pled the elements of unjust
enrichment.

enrichment is a form of quasi-contractual liability, and that
quasi-contract cases involve either some direct relationship
between the parties or a mistake on the part of the person
conferring the benefit." Stewart v. Beam Glob. Spirits & Wine,
Inc., 877 F. Supp. 2d 192, 196 (D.N.J. 2012) (internal quotation
marks omitted); Wanaque Borough Sewerage Auth. v. Twp. of W.
Milford, 144 N.J. 564, 575 (1996) (same).  It is critical in
order for the Court to be able to analyze the claim for a
plaintiff to be specific about the benefits conferred.
See Glauberzon v. Pella Corp., 2011 WL 1337509, at *10 (D.N.J.
Apr. 7, 2011) (holding that it was unable to consider an unjust
enrichment claim where the particular benefit conferred was not
specified).

Plaintiff here, once again, has simply recited the elements
of unjust enrichment without specifying how the facts of his
case make out the claim.  With respect to the benefit he claims
he conferred on Defendant, he simply states that Defendant
"received approximately ten million dollars from the legal
services of the plaintiff[.]"  (ECF 1 at 29).  Even considering
Plaintiff's rambling Statement of Facts at the beginning of the
Complaint, it is unclear what services Plaintiff provided for
which he was not compensated.  Plaintiff also has "not alleged
that [he] anticipated any specific form of remuneration[.]"
Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 755 (D.N.J.

2013)  Therefore, Plaintiff's claim for unjust enrichment must be dismissed.

Finally, Plaintiff attempts to state a claim for conversion in Count Six.  "[A] conversion claim under New Jersey law consists of three elements: (1) the defendant wrongfully exercised dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it." Id. at 753.  Plaintiff states in a rather conclusory manner that "[t]he defendant interferes and deprives the plaintiff of possession, control, and title of chattel. without the consent of the plaintiff, right or justification under the law, and specifically, but not limited, to $300,000.00 in cash from a Trumark account, $800,000.00 in fees, approximately $40,000.00 for costs, $25,000.00 of the #400.00 settlement amount, and $200.000 00 for realty and $6,000,000.00 in stocks and bonds, which property is by contract given and/or by assignment the plaintiff's." (ECF 1 at 30).  This rambling sentence does not state a plausible claim for relief.  It does not explain how Defendant "wrongfully exercised control" over property of Plaintiff or that property was taken to the "exclusion" of Plaintiff's rights. Jurista, 492 B.R. at 753.  Essentially, Plaintiff does not define exactly what actions Defendant took and what right they impeded. Davis v. Bank of Am., NA, 2020 WL

2764802, at *7 (D.N.J. May 27, 2020) (Holding that to state a
claim for conversion plaintiff needed to show "how [the action
in question] constitute[d] wrongful interference with her
property right").  Plaintiff has not stated a claim for
conversion and that Count must be dismissed.

For the reasons stated above, Plaintiff has failed to state
a claim under Rule 12(b)(6) for any of his claims and his
Complaint will be dismissed in its entirety.

**b. The Probate Exception, Res Judicata, and Abstention**

In addition to moving to dismiss for failure to state a
claim under Rule 12(b)(6), Defendant lists several other bases
on which it contends that the Court should dismiss the
Complaint.  Specifically, Defendant argues that the Court should
dismiss the Complaint under the probate exception, res judicata,
and several abstention doctrines, including the Brillhart-Wilton
Doctrine, the Colorado River Doctrine, the Rooker-Feldman
Doctrine, and the Younger Doctrine.  (See generally ECF 9).

In light of the overall nature of Plaintiff's claims and
the obvious and even acknowledged relationship to the underlying
dispute in the Orphans' Court Proceeding, it might very well be
that the constraints on this Court's jurisdiction urged by
Defendant might indeed apply.  The Court is left with the
overall sense that this matter has all the earmarks of an end
around the state estate litigation.  However, any such

22

determination would be premature.  The proper application of such limiting doctrines requires a full and clear understanding of both the facts underlying Plaintiff's claims and the legal theories advanced as claims.  In light of the Court's holding that Plaintiff has failed to state any claim whatsoever, it would be inappropriate for the Court to opine on the other proffered reasons why the Complaint should be dismissed.  More specifically, because the Court cannot determine the contours of the claims in the Complaint or the facts which would make them plausible, it cannot also determine whether such claims survive these potential mandatory or discretionary limitations on the Court's jurisdiction these doctrines represent.

For example, to determine whether the probate exception applies in a matter, the Court would have to determine whether Plaintiff is asking the Court to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court[.]"  Three Keys Ltd. v. SR Util. Holding Co, 540 F.3d 220, 227 (3d Cir. 2008).  Here, the claims in the Complaint are so murky that it is not clear whether or not Plaintiff is asking the Court to do any of those three things.  Accordingly, in the face of Plaintiff's failure to state a claim, the Court

will decline to rule on the other proffered basis for dismissal.

## IV.  **Motion to Strike**

The Court will also deny Plaintiff's motion to strike Defendant's motion to dismiss.  Rule 12(f), which Plaintiff cites as the basis for his motion, provides that a party may move the court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f) (emphasis added).  The Federal Rules of Civil Procedure include a list of permitted "pleadings," which does not include motions, briefs supporting motions, or attached exhibits, and addresses motions under a separate subsection.  See Fed. R. Civ. P. 7.  Therefore, Plaintiff cannot move to strike Defendant's motion to dismiss.

Numerous other courts in this district have similarly reached the conclusion that a motion to strike another party's motion, supporting brief, or exhibits attached to a motion is procedurally improper. See, e.g., Kaplan v. Saint Peter's Healthcare System, 2019 WL 1923606, at *6 (D.N.J. Apr. 30, 2019) ("[B]riefs are, by their nature, argumentative and sometimes contentious filings, [thus], it is generally held that a brief— as opposed to other forms of pleadings—typically will not be considered a 'pleading' which is properly the subject of a motion to strike."); In re Amarin Corp. PLC., 2015 WL 3954190, at *3 (D.N.J. June 29, 2015) ("[T]he Court denies Plaintiff's

24

motion [to strike], because Plaintiff does not move to strike any statements from a pleading; rather, Plaintiff seeks to strike statements made in a reply brief."); In re Schering-Plough Corp./Enhance Sec. Litig., 2009 WL 1410961, at *2 (D.N.J. May 19, 2009) ("Rule 12(f) speaks only in terms of striking matters from 'a pleading,' and makes no provision for materials attached to, for example, motions to dismiss or to strike. Accordingly, because Plaintiffs attempt to strike declaration exhibits attached to Defendants' motions, rather than to parts of a pleading, Plaintiffs' motion to strike is procedurally incorrect and should be denied."). Accordingly, Plaintiff's motion to strike will be denied.

<u>**CONCLUSION**</u>

For the reasons expressed above, Plaintiff's motions for default judgment (ECF 6) and to strike (ECF 10) will be denied. Defendant's motion to dismiss (ECF 9) will be granted in its entirety.

An appropriate Order will be entered.


Date: January 7, 2022              /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

25